**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAM P.,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT,<br>Respondent. | No. 1:26-cv-06104-JLT-EGC (HC)<br>A-Number: 029-190-223<br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS, DENYINF THE PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE, AND DIRECTING CLERK OF COURT TO CLOSE CASE<br>(Docs. 1, 9) |

**INTRODUCTION**

Petitioner is proceeding without counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. On August 12, 2026, the magistrate judge recommended that the petition for writ of habeas corpus be granted and Respondent be directed to immediately release Petitioner. (Doc. 9.) On August 17, 2026, Respondents filed timely objections. (Doc. 9.)

According to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including Respondent's objections, the Court declines to adopt the findings and recommendations and DENIES the Petition.

**LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld,* 542 U.S. 507, 525 (2004)

(citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025). The Petitioner bears the burden of demonstrating by a preponderance of evidence that his detention is contrary to law. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025); *Martinez v. Bondi*, No. 1:25-CV-01633-EFB (HC), 2026 WL 496938, at *1 (E.D. Cal. Feb. 23, 2026).

**BACKGROUND**

Petitioner is a native and citizen of Vietnam, who entered the United States without inspection, admission, or parole in 1979. (Doc. 8-1, ¶ 6.) On July 12, 2007, an Immigration Judge ordered Petitioner removed to Vietnam. (*Id*., ¶ 7 & Ex. 2.) Petitioner waived appeal. (*Id*.) On October 11, 2007, Petitioner was released from immigration custody under an Order of Supervision ("OSUP") because, at that time the Vietnamese Consulate was not issuing travel documents to their citizens. (*Id*., ¶ 7 & Ex. 3.) One of the conditions of his release was that he "not commit any crimes or be associated with any criminal activity" while on the OSUP. (*Id*., Exh. 3.)

Between 1989 and 2025, Petitioner was convicted for multiple offenses, including robbery, burglary, grand theft auto, petty theft, receiving stolen property, and petty theft with priors. (*Id*., ¶ 8 & Ex. 4.) Several of his convictions were incurred after his release on OSUP, including a number that resulted in prison sentences. (*See* Doc. 8-1 at 35–43.) On October 23, 2025, Petitioner was convicted of theft in Los Angeles County and was sentenced to 16 months in prison. (*Id*. at 48.) On May 28, 2026, ICE took Petitioner into custody at the North Kern State Prison in Delano, CA. (*Id*. at 47.) ICE served Petitioner with a Warrant of Removal/Deportation dated that day. (*Id*. at 50.)

On or about June 8, 2026, Petitioner completed an application for a travel document or passport. (Doc. 8-1, ¶ 11.) On June 18, 2026, ICE submitted a travel document request to the Consul General of Vietnam. (*Id*., ¶ 12.)

**DISCUSSION**

Petitioner claims here that he was re-detained in violation of his due process rights, that he is being detained in violation of the Immigration and Nationality Act, and that his continued detention has become unreasonable and no longer serves a legitimate civil immigration purpose. (Doc. 1 at 2, 6.)

First, ICE lawfully re-detained petitioner on May 28, 2026 because he violated the terms of his release. (Doc. 8-1, ¶ 10.) Under applicable regulations, "[a]ny alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody .... [and] [t]he alien may be continued in detention *for an additional six months* in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released." 8 C.F.R. § 241.13(i)(1) (emphasis added). Petitioner does not suggest that Respondents failed to afford him any of the procedural protections applicable to individuals who have had their post-removal OSUP revoked. *See* 8 C.F.R. § 241.13(i)(3) (describing revocation procedures, which include conducting an informal interview promptly after a return to custody). Thus, Petitioner has not established that his detention violates the INA or any of its implementing regulations.

Due process imposes limits on post-removal detention in *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), which held that a six-month period of detention was "presumptively reasonable," but that after the six-month period:

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701.

Petitioner's detention is approaching six months if his initial detention of 89 days in 2007 is <u>added</u> to the duration of his continued detention (84 days), but combining his past and present

periods of detention is in conflict with the language of 8 C.F.R. § 241.13(i)(1) which plainly allows DHS to restart the six-month clock in the event of an OSUP violation. *See Lam v. Noem*, No. 5:25-CV-03344-CV (RAO), 2025 WL 3763372, at *3 (C.D. Cal. Dec. 18, 2025) ("8 C.F.R. section 241.13(i)(1), which was enacted post-*Zadvydas*, provides an important change in how the time period is calculated. Specifically, the section provides that where a noncitizen violates a condition of release, they 'may be continued in detention for an additional six months.'"). Because Petitioner has only been in custody 84 days since his OSUP was revoked, any claim based on *Zadvydas* is premature and must be dismissed without prejudice.[1]

**CONCLUSION AND ORDER**

For the above reasons:

1. The Court declines to adopt the findings and recommendations issued on August 12, 2026 (Doc. 9).
2. The petition for writ of habeas corpus is **DENIED.** This denial is **WITHOUT PREJUDICE** to a renewed *Zadvydas* prolonged detention claim.
3. The Clerk of Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated: August 20, 2026

UNITED STATES DISTRICT JUDGE

[1] The Court notes that while a noncitizen's detention is no longer *presumed* to be reasonable after six months, "there is nothing in *Zadvydas* that suggests that the Court must or even should assume that any detention exceeding that length of time is unreasonable. Rather, the passage of time is simply the first step in the analysis. Petitioner must then provide 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Lema v. INS*, 214 F. Supp. 2d 1116, 1118 (W.D. Wash. 2002), *aff'd* 341 F.3d 853 (9th Cir. 2003).